The opinion of the court was delivered by
Spencer, J.
The property of the succession of Mildred S. Cutliff,. on-application of her husband, R. A. Cutliff, as executor, was sold to pay debt, on twelve-months credit, the purchasers executing twelve-months-bonds.
Among other property sold was the “ Southern Hotel,” in Shreveport, adjudicated to A. H. Leonard for $13,600, for which he gave a *1196 -twelve-months bond with E. A. Leonard as security. The deed to Leonard was recorded in Conveyance Book, February 26,1874, but there was no registry in Mortgage Book until twenty-second January, 1875. Prior to this registry in Mortgage Book, to wit, on December 30,1874, Snider & Holmes, plaintiffs herein, obtained and registered in the Mortgage Book •a judgment against A. H. Leonard, thereby acquiring a judicial' mortgage on his property in Caddo.
On application of the executor, ex parte, the parish judge ordered that “ he be authorized to pay the debts due by the succession by transferring to the creditors the twelve-months bonds given by the pur■chasers of the property at the said succession sale. This order was granted and its execution attempted to be carried out with some of- the creditors. This was before there was any account rendered or classification of debts in the probate court, and before any judicial ascertainment of the solvency of the succession' — that being yet an open and disputed question.
The twelve-months bond of A. H. Leonard was a large one — for $13,600 — larger than the debt of any one creditor. Thereupon the executor .hit upon this novel device to meet the exigencies of the occasion. He found that the debts due Jacob Hoss, W. A. Pegram, and Louis Taylor amounted to $11,041 32, or $2558 68 less than the bond. He -thereupon wrote upon the bond as follows: “This bond is credited with the sum of $2558 68 Of its date, and is now transferred to Jacob Hoss, W. A. Pegram, and Louis Taylor in payment of debts due them by estate of M. S. Outliff, deceased, March 11,1874.
“ R. A. Outliff, Executor.”
The proof is direct and positive that not one dollar had been paid on said bond. Indeed, it is not stated in the indorsement that any payment had been made, but simply that “ a credit” was put on it. It- is shown that R. A. Outliff was not under bond as executor and not responsible ; that a vexatious litigation had been goiDg on between him and some of the creditors — they trying to force him to give bond, and he trying to sell the property without doing so ; that a sort of compromise was reached, and under the sanction of the court it was arranged that the sale should proceed and the funds should be deposited in bank, and the executor be not required to give security. This arrangement to give over these twelve-months bonds to the creditors was evidently a sub-' ■■stitute for the “ bank deposit scheme.” By this arrangement it was expected that their collection by an irresponsible party would be avoided •■and the creditors secured. It needs no argument to show that an •executor of a probably insolvent succession can not, by renouncing its Tights, give away its effects; and it would seem equally certain that ¡before the rendition of an account, and classification and ascertainment *1197 of its debts, he can not, with or without the order of the court, set off and give to one creditor an asset of the estate, even at its face value, for the reason that the remaining assets might prove worthless, and the-other creditors be left without any thing. Such a mode of settling successions is not to be tolerated; and we hold that the attempted assignment of Leonard’s twelve-months bond did not divest the succession ot its rights of ownership therein; and further, that the so-called credit indorsed thereon did not extinguish any part of the said bond.
Some time after this attempted assignment and credit, the creditors to whom the bond had been given returned it to the executor, who brought suit against A. H. Leonard to resolve the sale for non-payment of the price. Leonard answered the suit on the same day that the petition was filed, admitted the non-payment, and made no opposition to the dissolution. There was judgment dissolving the sale and restoring the property to the succession of Cutliff free of all incumbrances imposed on it by Leonard.
The plaintiffs bring this revocatory action to annul this judgment as obtained and consented to by their debtor Leonard, in fraud of their rights, and with intent to defeat their judicial mortgage on the property. The basis of plaintiffs’ .argument is that the succession of Cutliff had parted with the twelve-months bond, and did not therefore hold the debt due for the price of the sale, and had no interest in its resolution; that no one but the vendor himself can bring the resolutory action, and that therefore as the assignees of said bond could not do so they fraudulently interposed Cutliff, executor and vendor, to bring the suit. It is unnecessary for us to decide in this case whether the right of resolution passes or not to the transferee of the debt for the price. We may say, however, that we consider it an open question. Such being the cornerstone of plaintiff’s pretension, our conclusion, stated above, that the estate of Cutliff, the vendor, does own the bond, would seem to remove it. Sublato fundamento, casit opus.
We think it highly probable that this actio.n in resolution was prompted and necessitated by the fact that by not registering the bond in the mortgage office .promptly the security of the debt was jeopardized by the interposition of plaintiffs’ judicial mortgage. It can not be denied that if the price be not paid the vendor may resolve the sale. This is an indubitable right. Plaintiffs do not pretend that the price ever had been paid. On the contrary, they show that Leonard was and is hopelessly insolvent, which of itself is strongly presumptive of :qon-payment. It may have been wrong or wicked in him not to pay, and thereby he undoubtedly injured plaintiffs. But we do not see in this any reason why the executor of Cutliff should have allowed plaintiffs to swallow up the property of that estate, when by the exercise of a plain legal right it *1198 could be averted. No doubt Leonard was gratified at the opportunity of getting rid of an elephant in the shape of a hotel, which plaintiffs’ counsel assert was worth much less than he gave for it. Whatever were his motives, the vendor in exercising the remedy of resolution and thereby recovering a thing never paid for and honestly belonging to him, does no wrong to the creditors of the vendee. What equitable right have they to take property to pay their debts, when that property did not belong to their debtor, because not paid for ? If they thought it their interest to keep the property in the patrimony of their debtor, they could have done so by exercising his right and paying the price to the vendor. But if the property be worth less than the price due, as is admittedly the case here, we are at • a loss to see what wrong plaintiffs have suffered by having it taken back, and their debtor burdens thereby diminished. Plaintiff’s claims has little to support in law and less in equity.
The judgment appealed from is correct, and is affirmed at costs of appellants.